**No. 25-40835**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

JOE GONZALES,
*Plaintiff – Appellant,*

v.

UNITED STATES OF AMERICA,
*Defendant – Appellee.*

On Appeal from the United States District Court for the Southern District of Texas, Corpus Christi Division
Case No. 2:22-cv-00062

BRIEF OF DEFENDANT—APPELLEE

AARON F. REITZ
UNITED STATES ATTORNEY

ARIEL N. WILEY
Assistant United States Attorney
1000 LOUISIANA STREET
SUITE 2300
Houston, Texas 77002
Telephone: (713) 567-9344

## Certificate of Interested Persons

Appeal Number: **25-40835**

*Joe Gonzales, Plaintiff – Appellant v. United States of America, Defendant – Appellee*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

- Joe Gonzales—Plaintiff-Appellant
- Matthew Mendez—Counsel for Plaintiff-Appellant
- Patrick Beam—Counsel for Plaintiff-Appellant
- The United States of America—Defendant-Appellee
- Ariel N. Wiley—Counsel for Defendant-Appellee

/s/ *Ariel N. Wiley*
Assistant United States Attorney
Attorney for Defendant–Appellee

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary. The record and briefs adequately present the facts and legal arguments, and oral argument would not significantly aid the decisional process. Fed. R. App. P. 34(a)(2)(C).

# TABLE OF CONTENTS

**Certificate of Interested Persons** .......... II
**Statement Regarding Oral Argument** .......... III
**Table of Contents** .......... IV
**Table of Authorities** .......... VI
**Summary of the Argument** .......... 5
**Argument** .......... 6

I. The district court's findings in the United States' favor should be upheld because the findings of fact are not clearly erroneous since they are supported by the evidence in the record. .......... 6

A. Standard of review .......... 6

B. Standard for the Texas Civil Defense Privilege § 9.51(a). .......... 7

C. The district court's findings should be affirmed because Gonzales's disagreement with the facts is not sufficient to show clear error. .......... 9

D. The district court's findings should be affirmed that the Texas Civil Defense privilege applies because the officers were still in the processes of executing the warrant. .......... 16

E. Gonzales's opinion that the findings are inconsistent does not amount to clear error, because the findings are still supported by the record. .......... 19

F. Gonzales's argument that SDUSM McAdam and Deputy Mihelich should be analyzed separately is not supported by the law and is not relevant given the basis of the district court's findings. .......... 21

G. The findings demonstrate that the Government more than carried its burden. .......... 21

**Conclusion** .......... 22
**Certificate of Service** .......... 24
**Certificate of Compliance** .......... 25

# TABLE OF AUTHORITIES

Page(s)

Cases

*Anderson v. City of Bessemer*,
470 U.S. 564, (1985) .......... 10

*Andrade v. United States,*
116 F. Supp. 2d 778 (W.D. Tex. 2000) .......... 7

*Appliance Liquidation Outlet, L.L.C. v. Axis Supply Corp.*,
105 F.4th 362 (5th Cir. 2024) .......... 6

*Barto v. Shore Constr.*,
801 F.3d 465 (5th Cir. 2015) .......... 6

*Becker v. Tidewater, Inc.*,
586 F.3d 358 (5th Cir. 2009) .......... 6

*Bommarito v. Belle Chasse Marine Transp.*, L.L.C.,
159 F.4th 297 (2025) .......... 10

*Brumfield v. Cain*,
808 F.3d 1041 (5th Cir. 2015) .......... 10

*Davila v. United States,*
713 F.3d 248 (5th Cir. 2013) .......... 8

*Deloach Marine Servs., L.LC. v. Marquette Transp. Co.*,
974 F.3d 601 (5th Cir. 2020) .......... 10

*Guzman v. Allstate Assur. Co.*,
18 F.4th 157 (5th Cir. 2021) .......... 21

*Guzman v. Hacienda Recs. & Recording Studio, Inc.*,
808 F.3d 1031 (5th Cir. 2015) .......... 6, 9

*Henry Le v. United States*,
138 F.4th 264 (2025) ........ passim

*Hess Corp. v. Schlumberger Tech. Corp.*,
26 F.4th 229 (5th Cir. 2022) ........ 9, 10

*Hinojosa v. City of Terrell, Texas*,
834 F.2d 1223 (5th Cir.1988) ........ 7

*Jauch v. Nautical Servs., Inc.*,
470 F.3d 207 (5th Cir. 2006) ........ 6

*Meche v. Doucet*,
777 F.3d 237 (5th Cir. 2015) ........ 9

*Neville v. State*,
622 S.W.3d 99 (Tex. App. – Waco July 20, 2020, no pet) ........ 16

*Petrohawk Props., L.P. v. Chesapeake Louisiana, L.P.*,
689 F.3d 380 (5th Cir. 2012) ........ 9

*Ryser v. State*,
453 S.W.3d 17 ........ 17, 19

*Texas Dep't of Pub. Safety v. Pett*a,
44 S.W.3d 575 (Tex. 2001) ........ 7

*U.S. Bank N.A. v. Lamell*,
No. 25-20056, 2026 U.S. App. LEXIS 7643 (5th Cir. 2026) ........ 6

Statutes

28 U.S.C. § 1291 ........ VIII, 3
Tex. Penal Code Ann. § 9.51(a) ........ 8, 13, 17, 21

Rules

Fed. R. App. P. 4(a)(1)(B) ........ VIII
Fed. R. App. P. 34(a)(2)(C) ........ III

## STATEMENT REGARDING JURISDICTION

This appeal arises from Appellant Joe Gonzales's civil lawsuit, for which the district court had jurisdiction under the Federal Tort Claims Act (FTCA). After trial, the district court (Morales, J.) issued a final judgment in favor of the Appellee, the United States, finding that the United States was not negligent under the Texas Civil Defense Privilege. ROA.1703-1724. Gonzales timely filed a notice of appeal on December 23, 2025. ROA.1725; *see* Fed. R. App. P. 4(a)(1)(B); 4(a)(4)(A)(iv). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUE

Whether the district court's findings of fact are clearly erroneous even though the findings are significantly supported by the evidence in the district court's record.

## STATEMENT OF THE CASE

This appeal arises from the district court's findings after a bench trial for a case brought under the FTCA. ROA.1703. On March 28, 2020, deputies with the United States Marshal Service were participating in an initiative to apprehend fugitives in conjunction with the Corpus Christi Police Department. ROA.2126. One of those fugitives was Nathan Bills, a murder suspect, who law enforcement had been informed had recently started renting a house (2730 Kitchens Street) to sell drugs in a high crime area. ROA.2198; ROA.2228; ROA.1910-1911. As a part of the initiative, law enforcement conducted a raid on the house. ROA.1972-1973. The United States Marshals did not wear body cameras at the time, but the Corpus Christi Police Department did, thus the video footage available is from the perspective of Officer Holthouse with the Corpus Christi Police Department. ROA.1934. Based on his training and experience, Supervisor Deputy United States Marshal (SDUSM) William

David McAdam Jr. believed that Bills, as a violent person, might associate with other violent people. ROA.1911.

As law enforcement began to converge on the house, they apprehended Bills in front of the house while Appellant Joe Gonzales was inside the house working on the plumbing in the bathroom. ROA.1836-1838; ROA.2260-2261. Law enforcement brought Gonzales out of the house, and he was instructed to get on his knees and place his hands on top of his head. ROA.2261-2262. At the time, SDUSM McAdam was unsure if law enforcement had cleared the house, so the house still presented a safety concern. ROA.2204.

On video, as SDUSM McAdam, Deputy United States Marshal (DUSM) Don Mihelich, and Officer Holthouse approached the house, Gonzales was standing by a white van. ROA.2079; ROA.2483, Gonzales's Exhibit 1, 0:00:45-0:00:55. Officer Holthouse yelled "get on the ground" three times to everyone outside. *Id.* at 0:00:56-0:00:58. As SDUSM McAdam approached the house and started walking towards Gonzales, he had his hands on his weapon, a long gun; he was unsure if Gonzales had any prior criminal interactions with law enforcement and concluded

that there was imminent danger and a risk of gunfire. ROA.2206; ROA.2140-2143; ROA.2151; ROA.2183; ROA.2209.

As they approached, SDUSM McAdam was focused on multiple people, including Gonzales, who was at the scene, and did not believe that Gonzales had complied with the multiple law enforcement orders to "get down." ROA.2151. There were many unidentified people at the scene; it was hectic, and the entire scene had not yet been cleared. ROA.2062. Deputy Mihelich believed that Gonzales started to comply with the orders but was not fully compliant because he was not all the way on the ground. ROA.2082. At this time, Gonzales had lifted his head and was looking around, which could indicate to law enforcement that he was looking for an opportunity to escape or looking for a weapon. ROA.2173; ROA.2180. Gonzales had to be told several times by law enforcement to get down, stay down, and put his head down. ROA.2155; ROA.2483, Gonzales's Exhibit 1, 0:01:15-0:01:20. At this time SDUSM McAdam and Deputy Mihelich's foot made contact with Gonzales's shoulder area to ensure Gonzales complied with the order. *Id*; ROA.2155. Neither SDUSM McAdam nor Deputy Mihelich kicked, stomped, or hit Gonzales on his head or neck. *Id*.

Afterwards, Gonzales and the other suspects outside remained handcuffed outside while law enforcement cleared the house, where they found money and drugs. ROA.2177; ROA.1869; ROA.2483, Gonzales's Exhibit 1, 0:0:3:00-0:03:05. Once Gonzales was identified as a plumber, and not involved in the illegal activities, he was released, got his tools and left the scene. ROA.1893; ROA.2483, Gonzales's Exhibit 1, 0:51:25-0:51:29.

Gonzales sued the United States under the Federal Tort Claims Act, alleging that the United State Marshals committed assault and battery against him. ROA.21.

The case proceeded to a bench trial before district court Judge Morales, who found in favor of the United States. The district court found that Gonzales failed to overcome the Texas Civil Defense Privilege § 9.51(a) because the evidence showed that the force used occurred during a properly executed warrant and the Marshals were justified in using force because the degree of force used was immediately necessary to make or assist in making an arrest or search. ROA.1703-1724.

## SUMMARY OF THE ARGUMENT

The district court's findings of fact should be upheld because Gonzales cannot show that the district court committed clear error. First, Gonzales argues that the evidence should have been interpreted differently, but Gonzales's disagreement about how the district court viewed the evidence is not sufficient to show clear error. Second, the evidence shows that the Texas Civil Defense Privilege applies because the Marshals were assisting in the execution of a valid warrant. Third, Gonzales's opinion that the facts are inconsistent cannot show clear error that would justify overturning the judgment of the district court. Fourth, Gonzales's argument that SDUSM McAdam and Deputy Mihelich should be analyzed separately is baseless given the nature of the district court's findings. Fifth, and finally, the findings correctly show that the United States carried its burden. Therefore, the district court's findings of fact should be upheld.

## ARGUMENT

I. The district court's findings in the United States' favor should be upheld because the findings of fact are not clearly erroneous since they are supported by the evidence in the record.

A. Standard of review

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error, and legal issues are reviewed de novo." *Barto v. Shore Constr.*, 801 F.3d 465, 471 (5th Cir. 2015) (quoting *Becker v. Tidewater, Inc.*, 586 F.3d 358, 365 (5th Cir. 2009)). To reverse for clear error, this Court must be "left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 213 (5th Cir. 2006)). The Court has ruled that, "…[we] cannot reverse a district court's factual finding after a bench trial 'simply because we are convinced that we would or could decide the case differently.'" *U.S. Bank N.A. v. Lamell*, No. 25-20056, 2026 U.S. App. LEXIS 7643, *8 (5th Cir. 2026) citing *Appliance Liquidation Outlet, L.L.C. v. Axis Supply Corp.*, 105 F.4th 362, 374 (5th Cir. 2024) (quoting *Guzman v. Hacienda Recs. & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015)).

Gonzales does not challenge any legal issues; he challenges whether the findings of fact demonstrate clear error. Specifically, Gonzales contends that (1) the force used was not warranted; (2) the Texas Civil Defense Privilege pursuant to § 9.51(a) does not apply because Bills was apprehended at the time force was used on Gonzales; (3) the findings are inconsistent; (4) SDUSM McAdam and Deputy Mihelich should have been analyzed separately; and (5) that the United States did not meet its burden on an affirmative defense.

Gonzales's arguments, however, misapply the law, and the district court's findings should be affirmed.

B. Standard for the Texas Civil Defense Privilege § 9.51(a).

Under Texas law, a law enforcement officer is privileged to engage in certain conduct which could normally be considered tortious because the officer "has acted to further an interest of such social importance that it is entitled to protection, even at the expense of damage to the Plaintiff." *Andrade v. United States,* 116 F. Supp. 2d 778, 787 (W.D. Tex. 2000), *aff'd sub nom. Andrade v. Chojnacki,* 338 F.3d 448 (5th Cir. 2003) (citing *Hinojosa v. City of Terrell, Texas*, 834 F.2d 1223, 1231 (5th Cir.1988)).

An officer in Texas is privileged to use force, when necessary, in the performance of his duties as an officer, including his affirmative duty to execute all lawful process issued to him by any magistrate or court. *Andrade*, 116 F. Supp. 2d. 788. *See also Texas Dep't of Pub. Safety v. Pett*a, 44 S.W.3d 575, 579 (Tex. 2001) ("A police officer is privileged to use force to the degree he reasonably believes is necessary to make an arrest, taking care that the force used is commensurate with the necessity.").

This privilege is codified in Section 9.51 of the Texas Penal Code, which provides for a "civil privilege defense" that is applicable to intentional tort claims such as assault and battery. *See Davila v. United States,* 713 F.3d 248, 261 (5th Cir. 2013).

Under this privilege, a peace officer… is justified in using force against another when and to the degree [he] reasonably believes the force is immediately necessary to *make or assist in making an arrest or search*, or to prevent or assist in preventing escape after arrest, if: (1) [he] reasonably believes the arrest or search is lawful or, if the arrest or search is made under a warrant, he reasonably believes the warrant is valid; and (2) before using force, [he] manifests his purpose to arrest or search and identifies himself as a peace officer …, unless he reasonably

believes his purpose and identity are already known by or cannot reasonably be made known to the person to be arrested. Tex. Penal Code Ann. § 9.51(a) (emphasis added).

C. The district court's findings should be affirmed because Gonzales's disagreement with the facts is not sufficient to show clear error.

Gonzales's first argument is that the Texas Civil Defense Privilege does not apply because Bills had been apprehended and the force used was unreasonable. Appellant's Brief pp. 14-19. This conflates two arguments, that the privilege does not apply because Bills had been arrested, and that the force used was excessive. Since Gonzales's next argument is that the privilege does not apply because Bills was arrested, the United States will first address the argument of whether the force used was excessive.

"A finding [of fact] is clearly erroneous if it is without substantial evidence to support it, the court misinterpreted the effect of the evidence, or this court is convinced that the findings are against the preponderance of credible testimony." *Meche v. Doucet*, 777 F.3d 237, 241-242 (5th Cir. 2015) (quoting *Petrohawk Props., L.P. v. Chesapeake Louisiana, L.P.*, 689 F.3d 380, 388 (5th Cir. 2012)).

"Factual findings made during a bench trial deserve 'great deference.'" *Henry Le v. United States*, 138 F.4th 264, 274 (2025) (citing *Hess Corp. v. Schlumberger Tech. Corp.*, 26 F.4th 229, 233 (5th Cir. 2022), and quoting *Guzman v. Hacienda Recs. & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015)). In addition, the "district court's finding of fact is clear error only if it is 'implausible in the light of the record considered as a whole.'" *Id*; *Hess*, 24 F.4th at 233 (quoting *Brumfield v. Cain*, 808 F.3d 1041, 1057 (5th Cir. 2015) (quotation marks and citation omitted)). As the Supreme Court noted, "[w]here there are two permissible views of the evidence, the factfinder's choice between them *cannot* be clearly erroneous." *Id*; *Anderson v. City of Bessemer*, 470 U.S. 564, 574, (1985) (emphasis added). And when "the trial court's findings . . . are based on determinations of credibility[,]" this Court "grant[s] even greater deference . . . ." *Id*; *Hess*, 24 F.4th at 233 (quoting *Deloach Marine Servs., L.LC. v. Marquette Transp. Co.*, 974 F.3d 601, 607 (5th Cir. 2020) (cleaned up)).

> Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous . . . . The court owes even greater deference to findings based on the credibility of witnesses and must uphold them if based on coherent, internally consistent, and facially plausible testimony that is not contradicted by external evidence.

*Bommarito v. Belle Chasse Marine Transp.*, L.L.C., 159 F.4th 297, 304 (2025).

This Court has not often addressed the issue of clearly erroneous findings of fact in a bench trial under the FTCA but did so last year in *Henry Le v. United States*. *Henry Le*, 138 F.4th at 264.

In Le was in an accident with a United States Postal Service vehicle that resulted in a spinal surgery, a loss of his neurologic functions, a postoperative infection that snowballed into an esophageal tear and fistula that necessitated the implantation of a permanent feeding tube, recurring illnesses, later the amputation of both legs, and confinement to a bed or wheelchair. *Id*. at 271-272. In that case, after a four-day bench trial, the district court found for Le. *Id*. at 272. The United States appealed the findings as clearly erroneous arguing that the damages should have been substantially reduced because Le caused the second impact at the accident, Le was not wearing a seatbelt, the doctor that performed the surgery caused the post-operative results, and the district

court's award of damages was too high. *Id.* at 275-279. This Court affirmed the district court's findings and cited to how the district court had reviewed the evidence and that the conclusions were supported by a "swath of competing evidence." *Id.* at 275-278. Ultimately, this Court found that, while there may have been competing evidence, the district court's judgment was supported by the evidence. *Id.* at 282.

Here, Gonzales argues that the force was excessive because no force was necessary since he was "…completely compliant with the actual order given to him…" Appellant's Brief, p. 26. The district court disagreed based on a review of the video and the witnesses' testimony.

On camera, law enforcement gave three orders that applied to every non-officer at the scene, including Gonzales.

The first set of orders came from an unidentified Corpus Christi police officer who told Gonzales to get on the ground. ROA.1721; ROA.2079. Gonzales went from standing to his knees. *Id.* The second set of orders was Officer Holthouse yelling three times to get on the ground. ROA.1721; Gonzales's Exhibit 1, 0:0056-58. Gonzales moved his body towards the ground, positioning himself in a prone position, though still keeping his head up. ROA.1721; *Id.* at 0:01:02. The third set of orders

came from SDUSM McAdam and Deputy Mihelich. SDUSM McAdam said "head down" as he walked up to Gonzales. ROA.1721; *Id.* at 0:01:16. At this time, SDUSM McAdam put his foot on Gonzales's shoulder. ROA.1721. Then SDUSM McAdam and Deputy Mihelich said "head down" or "stay down" as SDUSM McAdam continued to have his foot on Gonzales and Deputy Mihelich put his foot on Gonzales's shoulder area. ROA.1721; *Id.* at 0:01:19.

Given that all this is on camera, it is undisputed that the entire interaction lasted approximately 25 seconds and that both Marshals' contact with Gonzales's shoulder lasted approximately three seconds. ROA.1721.

Gonzales spends a significant amount of time discussing his own confusion at the time the orders were given, and how the Court did not take Gonzales's confusion into consideration. Appellant's Brief, pp. 23-30. Gonzales's confusion, or lack thereof, is irrelevant, because the state of mind of the person upon whom force was used is not an element of the statute. Texas Civil Defense Privilege § 9.51(a).

What is an element is the state of mind of the officers. *Id.* Both SDUSM McAdam and Deputy Mihelich testified that they did not believe

that Gonzales was complying with law enforcement's orders. ROA.2155; ROA.2082. At the time, neither Marshal knew who Gonzales was, nor had Gonzales been cleared as a potential threat. ROA.2206; ROA.2140-2143; ROA.2151; ROA.2183; ROA.2209; ROA.2062; ROA.1893. There is no evidence to the contrary.

Gonzales disagrees with the Court's conclusion and argues that he complied with orders, was not a threat at the time force occurred, and that all the officers should have known. Appellant's Brief, pp. 29-30. But this argument is unsupported and is not sufficient to show clear error because the district court's findings are substantially supported.

First, despite the fact that Gonzales admits that witnessed approximately a dozen people at the scene understand and fully comply with the multiple orders by law enforcement, Gonzales argues that since he was still confused by the order and genuinely felt like he complied, the order should have been changed or he should have been exempt from following it. ROA.2483, Gonzales's Exhibit 1, 0:00:45-0:01:30. Appellant's Brief, pp. 26-28. Gonzales repeatedly argues that he complied with the order because he believed he complied, and if law enforcement wanted him to do something else, it should have given him an oral order.

Appellant's Brief, pp. 26-28. There is no legal support for this argument. Gonzales does not provide any law that excuses someone for failing to comply with a lawful order from law enforcement if they do not understand or genuinely believed he or she complied with the order. *Id.* This is undercut by the indisputable evidence that law enforcement did give multiple orders, and Gonzales did not comply. ROA.2483, Gonzales's Exhibit 1, 0:00:45-0:01:30. Furthermore, Gonzales does not provide any legal support that shows that law enforcement does not have discretion in how it gives orders at the scene, and that law enforcement is required to make its orders in a particular way. Notably, the officers gave him multiple orders – this is not about circumstances in which officers failed to order him to get down or put his head down.

Second, the district court found that SDUSM McAdam testified that Bills had threatened to have a shootout, and thus he feared for the safety of himself, other law enforcement, and other people nearby, such as the neighbors. ROA.1708; ROA.2197. SDUSM McAdam testified that when he approached the house, he was not sure if law enforcement cleared the house, which presented a safety concern, and that Gonzales failed to comply with multiple law enforcement commands. ROA.1709; ROA.2153.

Deputy Mihelich also believed that Gonzales had failed to fully comply with law enforcement orders. ROA.2082.

The district court was able to consider the video of the incident as well as the live testimony of the three individuals involved (Gonzales, SDUSM McAdam, and Deputy Mihelich) to determine if SDUSM McAdam and Deputy Mihelich believed Gonzales was a possible threat. The district court was also able to weigh the credibility of the witnesses' testimony. Gonzales's argument boils down to his belief that his testimony, his expert's testimony, and his interpretation of the video should be given more weight than SDUSM McAdam, Deputy Mihelich, and the district court's view of the evidence. Gonzales's challenge to the district court's weight of the evidence is not sufficient to show clear error. Therefore, the district court's findings should be affirmed.

D. The district court's findings should be affirmed that the Texas Civil Defense privilege applies because the officers were still in the processes of executing the warrant.

Gonzales's next argument is that the Texas Civil Defense Privilege under § 9.51(a) does not apply because Bills had been arrested by the time the force occurred. Appellant's Brief, pp. 13-17 and 30-36.

Specifically, Gonzales argues that the privilege does not apply in state-level official oppression cases. Appellant's Brief, pp. 30-36.

These oppression cases are not relevant here. Not only are oppression claims brought in Texas state court, but they are also instances where officers either arrived at a secured scene and attacked the arrested, handcuffed individual, or as a group, the officers surrounded and kicked and struck a suspect prior to his arrest. *Neville v. State*, 622 S.W.3d 99 (Tex. App. – Waco July 20, 2020, no pet) *Ryser v. State*, 453 S.W.3d 17 (Tex. App. – Houston [1st] 2014, pet. ref'd).

These extreme examples are not what occurred here. There is no dispute with the district court's findings that the force occurred during a raid to execute a lawful arrest warrant for a murder suspect. ROA.1721-1722. Gonzales argues that § 9.51(a) does not allow force just "to secure the scene," but that was not the entire conclusion reached by the district court in their findings. Appellant's Brief, pp. 34; ROA.1722. Texas Civil Defense Privilege § 9.51(a) applies when the force is immediately necessary to make or *assist in making an arrest or search* (emphasis added). A review of the video evidence shows that the force occurred near the beginning of the incident when law enforcement was still executing

the warrant. ROA.2483, Gonzales's Exhibit 1, 0:00:55-0:01:05. While Bills may have been detained, there is no dispute that this was a dangerous neighborhood and that the warrant was executed at a known drug house. ROA.2198; ROA.2228; ROA.1910-1911. There is also no dispute that there were approximately a dozen unknown individuals at the house and that inside the house law enforcement found significant amounts of illegal drugs and money. *Id*; ROA.2483, Gonzales's Exhibit 1, 0:00:55-0:01:05.

There is also no doubt that law enforcement was in the middle of executing the warrant at the time the force occurred. All the officers still had their weapons out, those weapons were trained on the suspects outside, they were still yelling orders, new suspects were still appearing from inside the house, or from the back yard, they were still approaching the house, and they had yet to enter, search, and clear the house. ROA.2204; ROA.2483, Gonzales's Exhibit 1, 0:00:00-0:01:30.

While Gonzales argues that the scene was secure before the Marshals left the scene, and therefore force was unnecessary, it is unreasonable to argue that the scene was secure when the force was used. The district court's findings that SDUSM McAdams and Deputy Mihelich

were in the middle of a raid and executing the warrant at the time of the force was used are well supported by the record and the evidence. And a brief view of the video evidence shows that law enforcement was still in the process of finding and detaining or arresting suspects and had yet to search or clear the house at the time the force occurred. ROA.2483, Gonzales's Exhibit 1, 0:00:00-0:01:30.

Thus, the district court's findings should be affirmed on this element as well.

E. Gonzales's opinion that the findings are inconsistent does not amount to clear error, because the findings are still supported by the record.

Gonzales argues that the findings are not supported because they are inconsistent. Appellant's Brief, pp. 37-44. That, however, does not accurately reflect the district court's findings nor is it an accurate interpretation of § 9.51(a).

The district court found that the Texas Civil Defense Privilege, § 9.51(a) applied because: (1) Deputy Mihelich and SDUSM McAdam are peace officer for purposes of § 9.51; (2) it was reasonably expected that Gonzales knew, and he admitted that he knew, that these were peace officers; and (3) SDUSM McAdam and Deputy Mihelich did not stomp or

kick Gonzales, as he alleges. ROA.1703-1724. Instead, the contact was more akin to a tap on the shoulder. *Id.* The district court further concluded that such force is reasonable, considering SDUSM McAdam and Deputy Mihelich were conducting a raid to execute an arrest warrant for a murder suspect. ROA.1720-1722.

Gonzales does not dispute that SDUSM McAdam and Deputy Mihelich are peace officers, and that he knew they were peace officers. Instead, he argues that the district court's findings contradict the video evidence. Appellant's Brief, pp. 37. This argument does not make any sense because the district court's findings are based almost entirely on the video evidence. ROA.1721. The district court used the video to conclude how many times Gonzales was given orders that he did not follow, whether SDUSM McAdam and Deputy Mihelich were still executing the warrant, what force was used, and how long the contact lasted during the force. ROA.1721; ROA.2483, Gonzales's Exhibit 1, 0:00:00-0:01:19. The video is the evidence that directly undercuts Gonzales's testimony that he was kicked and stomped. ROA.1721. Gonzales may argue that the video should have been interpreted differently, but that just shows that there may be conflicting viewpoints

of the evidence. This Court has found that insufficient to show clear error. *Le*, 138 F.4th at 274. Therefore, the district court's findings should be affirmed.

F. Gonzales's argument that SDUSM McAdam and Deputy Mihelich should be analyzed separately is not supported by the law and is not relevant given the basis of the district court's findings.

Gonzales argues that the district court should have analyzed SDUSM McAdam and Deputy Mihelich separately because in a § 1983 case, when determining qualified immunity, the officers should be analyzed separately. Appellant's Brief, pp. 44-47.

This is not a § 1983 case, qualified immunity was not at issue here, and the district court made its determination under Texas Civil Defense Privilege § 9.51(a). Therefore, this argument is unsupported, and the district court's findings should be affirmed.

G. The findings demonstrate that the Government more than carried its burden.

Gonzales argues that the United States failed to meet their burden of "beyond peradventure." Appellant's Brief, pp. 47-49. This, however, is the standard at summary judgment, not trial. *Guzman v. Allstate Assur. Co.*, 18 F.4th 157, 160 (5th Cir. 2021). There is no legal basis to argue

that the United States has a higher burden or the burden of "beyond peradventure" at trial.

To the extent that Gonzales argues that the United States did not meet its burden. His argument is that he disagrees with the district court's conclusion because he believes his evidence is stronger. That does not show that the district court's reliance on the video and the testimony of SDUSM McAdam and Deputy Mihelich, were improper or impermissible. As such, the district court's findings should be upheld.

## CONCLUSION

There is no evidence pointed to by Gonzales which would indicate that a mistake has been committed by the district court because the district court's findings are supported by the evidence in the record. Therefore, this Court should affirm the findings of the district court ruling.

Respectfully Submitted,

AARON F. REITZ
United States Attorney
Southern District of Texas

By: /s/ *Ariel N. Wiley*

Ariel N. Wiley
Assistant United States Attorney
Texas Bar No. 24093366
Federal ID No. 2554283
1000 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 567-9344
Facsimile: (713) 718-3303
Email: ariel.wiley@usdoj.gov

*Attorneys for Defendant-Appellee United States of America*

## CERTIFICATE OF SERVICE

I, **Ariel Nicole Wiley**, Assistant United States Attorney for the Southern District of Texas, hereby certify that on September 28, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.

Upon notification that the electronically filed brief has been accepted as sufficient, and upon the Clerk's request, seven paper copies of this brief will be submitted to the Clerk. *See* 5th Cir. R. 25.2.1 & 31.1; 5th Cir. CM/ECF filing standard E(1).

*/s/ Ariel N. Wiley*
**ARIEL N. WILEY**
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

As required by Federal Rule of Appellate Procedure 32(a)(7)(C), and pursuant to 5th Cir. Rule 25.2, I certify that:

1. This motion complies with the type-volume limitations of Rule 32(a)(7)(B) because this brief contains 5334 words.
2. This motion complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Century Schoolbook font.
3. The electronic version of this motion is an exact copy of the paper version, includes the required privacy redactions under 5th Cir. Rule 25.2.13, and has been scanned and reported free of viruses by the most recent version of a commercial virus-scanning program.

*/s/ Ariel N. Wiley*
**ARIEL N. WILEY**
Assistant United States Attorney